IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANE DOE<br><br>and<br><br>JOHN DOE,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>Debra Romberger,<br>in her official capacity as Director of the<br>Pennsylvania Division of Vital Records,<br>Pennsylvania Division of Vital Records,<br>Dr. Karen Murphy,<br>in her official capacity as<br>Secretary of Pennsylvania<br>Department of Health,<br>Pennsylvania Department of Health,<br><br>　　　　　　　　　　Defendants. | CIVIL ACTION NO. |

**COMPLAINT**

**PRELIMINARY STATEMENT**

1. The Pennsylvania Division of Vital Records ("Vital Records") is a division of the Pennsylvania Department of Health ("Health.")

2. Vital Records operates and administers the Commonwealth's Birth Certificate program and is required to do so in accordance with the laws of the United States.

3. Plaintiffs Jane Doe and John Doe were born in Pennsylvania, are transgender, and desire to change their gender on their birth certificates from an original gender assigned at birth to their correct gender.

4. Vital Records has a policy that will not permit the change without a court order or proof that Plaintiffs have undergone Gender Confirmation Surgery ("GCS".)

5. Vital Records' policy (the "Policy") violates (i) the Equal Protection clause of the United States Constitution, and (ii) the Americans with Disabilities Act, 42 U.S.C. §12101, et. seq. ("ADA") and are actionable pursuant to 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the parties and the claims asserted herein pursuant to 28 U.S.C. § 1331.

7. Plaintiffs' claims for declaratory relief are brought pursuant to 28 U.S.C. §§ 2201 and 2202.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiffs reside within this judicial district, the events giving rise to this action occurred in this judicial district, and Defendants are subject to personal jurisdiction in this judicial district.

## THE PARTIES

9. Plaintiff Jane Doe resides within this judicial district and was born in the Commonwealth. Plaintiff Jane Doe is appearing here under a pseudonym. A motion for anonymity is being filed simultaneously with this Complaint.

10. Plaintiff John Doe resides within this judicial district and was born in the Commonwealth. Plaintiff John Doe is appearing here under a pseudonym. A motion for anonymity is being filed simultaneously with this Complaint.

11. In her capacity as Director Of Vital Records, Defendant Romberger is responsible for the administration of the Policy.

12. In her capacity as Secretary of Health, Defendant Murphy is responsible for supervision of Health and Vital Health and Defendant Romberger.

13. All Defendants are obligated to ensure that transgender people are treated in accordance with the Constitution and laws of the United States. Defendants Romberger and Murphy have at all relevant times hereinafter mentioned acted under color of state law and are being sued in their official capacity.

### PERTINENT CONSTITUTIONAL PROVISIONS

14. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1.

15. The Supremacy Clause of the Constitution provides "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the contrary notwithstanding." U.S. Const. art. VI, cl. 2.

### PERTINENT FEDERAL STATUTES AND REGULATIONS

16. Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). It found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). For those reasons, Congress prohibited discrimination against individuals with disabilities by public entities. The ADA states:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.  42 U.S.C. § 12132.

17. The ADA's definition of "disability" includes "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(C).

18. An individual meets the ADA's definition of having a disability if he or she establishes that he or she has been subject to an action that the ADA prohibits "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Id. §§ 12102(1)(C), 12102(3)(A).

19. The statue is to be read broadly.  42 U.S.C. § 12102(4)(A) ("The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.")

20. At all times material herein, Vital Records and Health are public entities as defined under the ADA.  42 U.S.C. § 12132.

**PERTINENT PENNSYLVANIA STATUES REGULATIONS AND POLICES**

21. Health is authorized to prepare and retain birth certificates under the law of Pennsylvania. (Administrative Code of 1929, §§ 2104, 2111, 71 P. S. § 534, § 541.)

22. Health is authorized to create Vital Records. (Vital Statistics Law of 1953, § 201, 35 P. S. § 450.201 et. seq.)

23. The Pennsylvania Code regulations regarding issuance of birth certificates are at 28 Pa Code, Chapter 1.

24. Neither the enabling statute nor the code regulations provide for changes to gender on birth certificates.

25.     The Policy of Vital Records regarding gender identification on Birth Certificate allows changes for trans individuals only under restricted circumstances:

> The first option is to obtain a Court Order which changes the name and also includes a directive to the Division of Vital Records to change the gender designation.  It is required that the Court Order be certified, signed by the judge and affixed with the seal of the court.  A photo-copy of the Court Order is not acceptable.
>
> The second option if you already possess a certified Court Order change of name is a two step process.  The first step is to amend the name on the original birth record with the certified Court Order change of name in your possession.  It is required that the Court Order be certified, signed by the judge and affixed with the seal of the court.  A photo-copy of the Court Order is not acceptable.  The birth certificate may reflect a name that does not agree with the stated gender until the second step is completed.
>
> The second step will amend the gender item listed on the birth record.  After gender reassignment surgery [a/k/a GCS], submit a statement from the physician who performed the surgery stating that the gender reassignment is successfully completed.

## FACTS

26.     Plaintiffs are transgender.

27.     Transgender is a biological condition, due to brain neuroanatomy and the formation of that brain neuroanatomy in the womb.

28.     Transgender (or "trans") people are born with bodies whose anatomy and assigned gender differs from whom they actually are.

29.     Trans people cannot be diagnosed as such when first born.

30.     Gender Dysphoria ("GD") is a medical and therapeutic diagnosis, referring to the physical, mental and emotional difficulties that may arise in trans people due to the conflict between their brain anatomy and body anatomy.  Diagnostic and Statistical Manual of Mental Disorders, 5th Edition ("DSM-V" at 302.85.)

31.     Trans people are diagnosed as suffering from GD when they have "clinically significant distress" associated with being trans.  *Id*.

32.     GD is not the same as being transgender but may result from being transgender.

33. Procedures for GD treatment may include hormone or other prescriptions, therapy, Gender Confirmation Surgery ("GCS"), breast implants or removal ("top surgery"), and other procedures, including hysterectomy, genital reconstruction, and plastic surgery, as appropriate and prescribed and medically necessary for the particular person.

34. Not all trans people want, need, or are able to undergo GCS.

35. GCS is expensive, and private insurance or public insurance (e.g., Medicaid) may not cover its costs.

36. GCS may be contraindicated by a trans person's medical history because of other medical conditions.

37. The Federal Government does not require a trans person to undergo GCS to change gender classification for Social Security or passports, recognizing that trans people may not be able to undergo GCS.

38. Various states, e.g., New York, California, Iowa, Oregon, Vermont, and Washington, as well as the District of Columbia, have updated their birth certificate policies to recognize that an individual's gender does not depend on surgical status.

39. Pennsylvania does not require GCS to change a gender marker on a driver's license.

40. GD is an identifiable, severe, and incapacitating disease that causes constant suffering, emotional and mental distress.

41. GD is a disability within the meaning of the ADA in that it substantially impairs one or more of major life activities, including, but not limited to, interacting with others, reproducing, and social and occupational functioning.

42. A birth certificate is a fundamental identification document and, without their gender being accurately stated on their birth certificates, trans people with GD but without GCS undergo constant suffering, emotional and mental distress.

43.     Defendants' Policy, in not permitting a change to gender on a birth certificate for those trans people diagnosed with GD yet without GCS, is discriminatory.

44.     Defendants' Policy discriminates against a subgroup, those trans people diagnosed with GD yet without GCS, as the Policy permits a birth certificate gender change for the subgroup of those trans people diagnosed with GD who have undergone GCS.

45.     Defendants' Policy discriminates against those trans people diagnosed with GD yet without GCS as the Policy refuses accurate identification documents, a benefit provided to those individuals who are not trans people diagnosed with GD.

46.     Plaintiffs are trans people who have been diagnosed with GD.  Nether Plaintiff has undergone or plans to undergo GCS.

47.     Plaintiffs are harmed by Defendants' Policy.

48.     Plaintiffs belong to the disadvantaged subgroup of trans people diagnosed with GD yet without GCS.

49.     Plaintiffs belong to the disadvantaged class of trans people diagnosed with GD.

50.     Plaintiffs are disabled within the definition of the ADA as their GD substantially impairs one or more of major life activities, including, but not limited to, interacting with others, reproducing, and social and occupational functioning.

51.     Plaintiffs are regarded as disabled because they are able to establish that they have been subject to an action the ADA prohibits because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

52.     Additionally, Defendants are treating Plaintiffs significantly differently than other similarly-situated, non-transgendered individuals born in Pennsylvania.

53.     Defendants are aware of established medical and scientific evidence that trans people with GD may be disabled as a result of their GD.

54. Defendants' Policy, in providing inaccurate birth certificates to trans individuals with GD, but who have not or will not undergo GCS, while at the same time providing accurate birth certificates to all other, is without any rational basis.

55. Defendants are aware of the Commonwealth's established law and policy banning transgender discrimination in state employment and by state contractors.

56. Defendants are aware of the policy of the Commonwealth regarding trans discrimination as recently announced by Governor Wolf: "it is the policy of the Commonwealth to treat all residents of this Commonwealth with dignity and respect, regardless of race, gender, creed, color, sexual orientation or *gender identity or expression, and discrimination on any grounds should be prohibited.*"

57. As a result, Defendants have acted willfully and in bad faith in their birth certificate Policy.

58. Plaintiffs' rights to equal protection under the law have been violated by Defendants.

59. Plaintiffs' rights to equal protection under the ADA have been violated by Defendants.

60. Plaintiffs' rights were and are being violated by Defendants knowingly, willingly, and in bad faith.

61. Plaintiffs' rights were and are being violated by the challenged governmental activity in the present case, are not contingent, are not and will not evaporate or disappear, and, by the Policy and Defendants' continued promulgation and enforcement of the Policy, casts a substantial adverse effect on Plaintiffs' interests and rights.

## COUNT I – VIOLATION OF THE EQUAL PROTECTION CLAUSE

62. Plaintiffs incorporate by reference their allegations set forth in paragraphs 1 through 61 above.

63.     Defendants' adopting, promulgating, and enforcing of the Policy violate the Equal Protection Clause of the Constitution of the United States, U.S. Const. amend. XIV, §1 by arbitrarily, intentionally, and in bad faith discriminating against a subgroup, those trans people diagnosed with GD yet without GCS by not permitting a birth certificate gender change, while at the same time providing a birth certificate gender change for the subgroup of those trans people diagnosed with GD who have undergone GCS and is without any rational basis.

64.     Defendants' adopting, promulgating, and enforcing of the Policy violate the Equal Protection Clause of the Constitution of the United States, U.S. Const. amend. XIV, §1 by arbitrarily, intentionally, and in bad faith providing inaccurate birth certificates to trans individuals with GD, but who have not or will not undergo GCS, while at the same time providing accurate birth certificates to all other and is without any rational basis.

65.     Defendants' adoption, promulgation, and enforcement of the Policy violate the Equal Protection Clause of the Constitution of the United States, U.S. Const. amend. XIV, §1 by arbitrarily, intentionally, and in bad faith discriminating on the basis of sex, gender identity or expression and/or disability.

66.     The Defendants' actions in promulgating and enforcing the Policy are undertaken purposefully, intentionally, and in bad faith, and bear no substantial or rational relationship to any compelling, important or legitimate government interest.

67.     42 U.S.C. § 1983 provides that Plaintiffs may proceed here to enforce their rights under the Equal Protection clause against Defendants.

## COUNT II – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

68.     Plaintiffs incorporate by reference their allegations set forth in paragraphs 1 through 67 above.

69. The actions of Defendants, through their agents, servants, and employee in discriminating against Plaintiffs on the basis of their actual and/or perceived disabilities and failing to provide reasonable accommodation for their disability, violates the ADA.

70. Defendants' adoption, promulgation, and enforcement of the Policy violates the ADA by arbitrarily, intentionally, and in bad faith discriminating against a subgroup, those trans people diagnosed with GD yet without GCS by not permitting a birth certificate gender change, while at the same time providing a birth certificate gender change for the subgroup of those trans people diagnosed with GD who have undergone GCS and is without any rational basis.

71. Defendants' adoption, promulgation, and enforcement of the Policy violates the ADA by arbitrarily, intentionally, and in bad faith providing inaccurate birth certificates to trans individuals with GD, but who have not or will not undergo GCS, while at the same time providing accurate birth certificates to all other and is without any rational basis.

72. Defendants' adoption, promulgation, and enforcement of the Policy violates the ADA by arbitrarily, intentionally, and in bad faith discriminating on the basis of disability.

73. As a direct result of the aforesaid unlawful discriminatory practices engaged in by Defendants in violation of the ADA, Plaintiffs have sustained harm.

74. As a further direct result of the aforesaid unlawful discriminatory practices engaged in by Defendants in violation of the ADA, Plaintiffs suffer severe emotional distress, embarrassment, humiliation, and loss of self esteem.

75. Defendants' actions in promulgating and enforcing the Policy are undertaken purposefully, intentionally, and in bad faith, and bear no substantial or rational relationship to any compelling, important, or legitimate government interest.

76. 42 U.S.C. § 1983 provides that Plaintiffs may proceed here to enforce their rights under the Americans with Disabilities Act against Defendants.

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Enter a declaratory judgment that the Policy violates the Equal Protection Clause of the United States Constitution and the Americans with Disabilities Act.

B. Issue a preliminary and permanent injunction:

i. Ordering Defendants to immediately provide Plaintiffs with birth certificates that accurately record their gender;

ii. Ordering Defendants to immediately withdraw the Policy and provide a policy for birth certificate gender change that provides for gender change without any need for GCS;

iv. Ordering Defendants to provide notice to any and all persons or entities Defendants may come into contact with in administering the Policy is discriminatory and has been withdrawn, and that a new policy, providing for gender change without any need for GCS is now controlling.

C. Award Plaintiffs compensatory and punitive damages, costs and disbursements, including reasonable attorneys' fees; and

D. Award Plaintiffs such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Date: May 13, 2016

/Julie Chovanes/
Julie Chovanes, Esq.
Trans Resource Foundation LLC
("Trans-Help")
P.O. Box 4307
Philadelphia, PA 19118
267-235-4570
jchovanes@chovanes.com

Paul R. Fitzmaurice, P.C.
130 Linden Avenue
Haddonfield, NJ 08033
(856) 287-4902
PaulRFitzmaurice@gmail.com

Counsel for Plaintiffs Jane Doe and John Doe